**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

MINNESOTA LABORERS HEALTH AND WELFARE FUND; MINNESOTA LABORERS PENSION FUND; MINNESOTA LABORERS VACATION FUND; CONSTRUCTION LABORERS' EDUCATION AND TRAINING FUND OF MINNESOTA AND NORTH DAKOTA; MINNESOTA LABORERS EMPLOYERS COOPERATION AND EDUCATION TRUST,

Plaintiffs,

vs.

PETER M. SCANLAN, d/b/a S.B.S. ENTERPRISES, and SPECIALTY BUILDING SERVICES, INC.,

Defendants.

Civil No. 00-2245 DDA/FLN

**ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

---

McGrann Shea Anderson Carnival Straughn & Lamb, Chartered, by PAMELA HODGES NISSEN, Minneapolis, Minnesota, appeared on behalf of Plaintiffs.

Oppenheimer Wolff & Donnelly LLP, by KRISTIN L. BOETTICHER, Minneapolis, Minnesota, appeared on behalf of Defendants.

---

This case involves determining whether Defendants Specialty Building Services, Inc. ("SBS, Inc.") and Defendant Peter M. Scanlan ("Scanlan") are liable to Plaintiffs, five union trust funds ("the Funds"), for any unpaid fringe benefit plan contributions under a collective bargaining agreement Scanlan executed on behalf of an entity called "SBS Enterprises." The parties do not dispute that the Employee Retirement Income Security Act of 1974 ("ERISA") provides the law governing contributions to the Funds. The Funds contend in essence that Scanlan and SBS, Inc. are jointly and severally liable for such contributions because "SBS Enterprises" has no existence independent of SBS, Inc. The Funds have moved for partial summary judgment on the issue of liability only.

FEB 04 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Summary judgment is appropriate if no genuine issue of material fact exists and if the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). For the reasons stated in this Order, the Court will grant the Funds' motion with respect to SBS, Inc., and will deny the Funds' motion with respect to Scanlan individually.

I.

Scanlan is one of three shareholders in SBS, Inc., which is a closely-held Minnesota corporation. The primary business of SBS, Inc., is the cleaning of commercial construction sites. In April 1999, after discussions with a union agent, Scanlan gave some employees of SBS, Inc., the opportunity to join Construction and General Laborers Union Local No. 132 ("the Union"). Five employees decided to join the Union, and Scanlan intended to have those employees available in order to bid on projects requiring union labor.

Scanlan and the Union executed a Commercial Cleaning Services Agreement (Skoog Affidavit Exhibit B, hereinafter "the CBA") on April 15, 1999. Scanlan executed this agreement as the principal of "SBS Enterprises." Although Scanlan apparently sought to run SBS Enterprises as a separate concern to conduct his business with union contractors, SBS Enterprises at no time had an existence separate from SBS, Inc. Between 1999 and the expiration of the CBA in April 2001, SBS, Inc., filed reports with the Funds for hours employees of SBS Enterprises had worked; the persons listed in the reports as employees of SBS Enterprises, however, were the employees of SBS, Inc., who had joined the union, and the payments to the Funds for those hours worked came from SBS, Inc. SBS, Inc. also provided all administrative services and supplies for the union projects, and cash income and tax liabilities from the union projects went on the accounts of SBS, Inc. SBS, Inc., assumed all payroll obligations for employees working on union jobs, and SBS, Inc., paid its employees for both union and non-union work in the same paycheck. No written agreements or other documents defining the relationship between SBS, Inc., and SBS Enterprises exist, and SBS Enterprises has no assets or operations independent of SBS, Inc.

The Funds attempted to audit the records of SBS Enterprises in September 2000 to ensure compliance with the terms of the CBA. The Funds commenced this action after they failed to obtain records from SBS Enterprises. The Funds argue that SBS, Inc., should provide benefit contributions for all SBS, Inc., employees who performed labor within the terms of the CBA because SBS, Inc., is the only entity qualifying as an "employer" of Scanlan's union employees under ERISA or, in the alternative, because SBS, Inc., is an alter ego of SBS Enterprises. The Funds also argue that Scanlan is liable individually for unpaid contributions of SBS, Inc., employees as a signatory to the CBA. SBS, Inc., and Scanlan argue in response that the question of their liability is not amenable to summary disposition on this record[1].

II.

The Funds' goal in this case is to recover unpaid contributions from employees of SBS, Inc., so the appropriate initial inquiry is whether SBS, Inc., is liable for such contributions under the CBA. Although SBS, Inc., qualifies as an "employer" of Scanlan's union employees as that term is used in ERISA, 29 U.S.C. § 1002(5), as the Funds suggest, that fact in itself is not dispositive. Liability for contributions to the Funds arises under the CBA, not under ERISA directly, and SBS, Inc., is not a party to the CBA. SBS, Inc., accordingly is liable for contributions under the CBA only if the Funds establish that SBS, Inc., assumed obligations under the CBA despite its lack of a formal connection with the agreement.

The Fund may establish that SBS, Inc., has obligations under the CBA if it shows that SBS, Inc., is an "alter ego" of a party to the CBA, here SBS Enterprises. Greater Kan. City Laborers Pension Fund v. Superior Gen. Contractors, Inc., 104 F.3d 1050, 1054 (8th Cir. 1997). This Circuit has not settled upon a test for establishing alter ego status for purposes of ERISA

---

[1] SBS, Inc., and Scanlan also assert that this Court lacks jurisdiction over the Funds' claims because those claims are within the exclusive jurisdiction of the National Labor Relations Board. The Eighth Circuit, however, has held that suits to recover unpaid benefit fund contributions pursuant to a CBA under ERISA are within the jurisdiction of the federal district courts. Greater Kan. City Laborers Pension Fund v. Superior Gen. Contractors, Inc., 104 F.3d 1050, 1058 (8th Cir. 1997).

claims, as the parties' submissions make clear. The court in Greater Kan. City Laborers Pension Fund v. Thummel, 738 F.2d 926 (8th Cir. 1984), seems to have applied the so-called "labor law" standard for alter ego liability, which looks to whether the business entities at issue are "substantially identical" in the areas of management, ownership, operations, and control. Id. at 929 (citing NLRB v. Campbell Harris Elec., Inc., 719 F.2d 292, 295 (8th Cir. 1983)). The Superior General Contractors court, on the other hand, specifically rejected the labor law standard in favor of a standard developed in corporate law, which allows a finding of alter ego liability if one business "(1) is controlled by another to the extent that it has an independent existence in form only and (2) is used as a subterfuge to defeat public convenience, to justify wrong, or to perpetrate a fraud." 104 F.3d at 1055 (citations omitted). Distinguishing between the two tests does not benefit SBS, Inc., however, because SBS, Inc., is an alter ego of SBS Enterprises under both tests. There is no evidence that SBS Enterprises as a business took any kind of action other than signing the CBA, and SBS, Inc., managed and controlled every obligation SBS Enterprises had under the CBA. Although Scanlan asserts, and the Funds do not deny, that he intended to establish SBS Enterprises as a separate concern to accommodate his union employees, that intent does not excuse Scanlan from the practical necessity of operating SBS Enterprises as an independent business[2]. SBS, Inc., cannot rely upon a nonexistent business entity to justify a failure to pay contributions to the Funds for the work of SBS, Inc., employees done within the subject matter and geographical scope of the CBA.

The same reasoning, however, militates against holding Scanlan individually liable to the Funds under an alter ego theory. As the Funds point out, Scanlan never operated a sole

---

[2] Scanlan and SBS, Inc., argue that the Funds are equitably estopped from asserting claims against them because a union representative assured Scanlan that could create a "split crew" of union employees. Even assuming that the doctrine of equitable estoppel applies to the Funds in this context, however, the record does not establish that the Funds made misleading representations to Scanlan. See Redman v. U.S. West Bus. Resources, Inc., 153 F.3d 691, 695 (8th Cir. 1998) (discussing requirements for equitable estoppel). Scanlan could have created a separate business for his union crew, but Scanlan failed to do so.

proprietorship that performed work within the scope of the CBA, and Scanlan signed the CBA to advance the interests of SBS, Inc., and its employees, not to benefit himself. Scanlan, furthermore, signed the CBA on behalf of SBS Enterprises, not in his individual capacity. If SBS Enterprises is indistinguishable from SBS, Inc., it follows that Scanlan for all practical purposes signed the CBA as an officer of SBS, Inc., especially since SBS, Inc., in fact assumed all obligations under the CBA.

III.

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. The Funds' motion for summary judgment is GRANTED with respect to Defendant SBS, Inc. SBS, Inc., is responsible for any unpaid contributions to the Funds for hours SBS, Inc., employees worked within the scope of the applicable collective bargaining agreement.

2. The Funds' motion for summary judgment is DENIED with respect to Defendant Peter M. Scanlan individually.

Dated: February 4, 2002

DONALD D. ALSOP, Senior Judge
United States District Court